UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DARIN SCOTT ROBBINS, | Case No. 2:18-cv-00698-APG-VCF |
| Petitioner, | **ORDER** |
| v. | |
| STATE OF NEVADA, et al., | |
| Respondents. | |

Darin Scott Robbins' pro se 28 U.S.C. § 2254 habeas corpus petition is before me for final adjudication on the merits. As discussed below, I deny the petition.

**I.    Background & Procedural History**

In February 2012, a jury convicted Robbins of burglary while in possession of a deadly weapon, conspiracy to commit robbery, first-degree kidnapping with use of a deadly weapon, and robbery with use of a deadly weapon stemming from a 2006 home invasion and robbery. Exhibit 241.[1] The state district court sentenced him to terms that amount to a minimum of 143 months to a maximum of 456 months. Exhs. 272, 283. Judgment of conviction was entered on July 10, 2012. Exh. 283.

The Supreme Court of Nevada affirmed Robbins' convictions in February 2011, and the Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in February 2018. Exhs. 2, 7.

Robbins filed his federal habeas petition in this court. ECF No. 10. He then filed a supplemental petition. ECF No. 12. In my January 9, 2019 order, I explained that I would construe the petition and supplement together. ECF No. 14.

In February 2020, I granted the respondents' motion to dismiss in part, concluding that all claims except grounds 1(a) and 2 were unexhausted or subject to dismissal. ECF No. 47. In

---

[1] The exhibits referenced in this order are the respondents' exhibits and are found at ECF Nos. 23, 36-43.

1

response to my order, Robbins elected to abandon his unexhausted claims and proceed on grounds 1(a) and 2. ECF Nos. 48, 49. The respondents have answered the remaining grounds, and Robbins replied. ECF Nos. 50, 52.

## II.	AEDPA Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for my consideration of the petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1)	resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)	resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). My ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing

2

law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III. Trial Testimony

The victim in this case, Mike Grochowski, testified at trial. Exh. 227, pt. 2, pp. 15-57; exh. 229, pt. 1, pp. 24-92. He stated the following: about 2:00 a.m. on December 1, 2006, two

3

men broke down his front door and one began beating him with a crowbar. The taller man was Caucasian and was wearing a dark green or black-patterned fleece and a bandana over the lower half of his face. The shorter man was 5'6"-5'7" tall, wearing light-colored pants, a black sweater, and a ski mask. At one point he pulled up the ski mask and Grochowski said that he looked Italian or Hispanic. The taller man choked Grochowski and the shorter one punched, kicked, and hit him with the crowbar. The two men called him by his first name and kept asking where the safe was. The taller man put a knife to Grochowski's throat. Grochowski repeatedly told them that he did not have a safe, and the taller man threatened to cut off Grochowski's fingers if he did not tell them; he then tried to cut the victim's fingers off. The intruders had a taser and tased Grochowski twice; he began screaming uncontrollably in pain. They cut the cord off the vacuum cleaner and tied his hands behind his back. The men took several items including Grochowski's wallet, truck keys, and cash from a kitchen drawer. The taller man forced Grochowski upstairs at knife point and told him to get on the ground and not to move. Grochowski heard sirens; when the taller man went downstairs Grochowski looked down from the loft and saw the man break a window and flee out the back of the residence.

Two men were apprehended in the area; Robbins was found hiding in a bush in a nearby yard. *See*, *e.g*., Exh. 235, pt. 1, pp. 51-52. A white van had been pulled up onto the front yard of Grochowski's residence. *See, e.g*., Exh. 227, pt. 1, pp. 66-67, 69-70, 72-73, 147; Exh. 229, pt. 2, pp. 2-3; Exh. 233, pp. 87-88.

A police detective testified that Grochowski picked two men out of a photo lineup; Robbins was not one of them. Exh. 231, 40-14, p. 113.

Detective Tate Sanborn testified that he interviewed Robbins, who told him that Frank Morales picked him up on the night in question around 11:00 p.m. or midnight. Exh. 235, pt. 1, pp. 75-111. He changed his mind a couple of times about the timing of events but then stated that Morales picked him up, and at about 1:30 a.m. they were at WalMart. Morales did some shopping. Robbins stated that he did not remember what Morales purchased. From there they drove to pick up a white van. Morales drove the van, and Robbins drove the car back to the

southwest part of town.  Robbins indicated that the beanie and neck warmer that were found near where police apprehended him were his.

A WalMart asset protection coordinator testified that a receipt recovered from the crime scene was from his store location and reflected purchases made on December 1, 2006, at 1:23 a.m. Exh. 235 pt. 2, pp. 1-19.  One receipt code matched the code on the crowbar at the crime scene.

**IV.     Current Petition**

**Ground 1(a)**

Robbins asserts that the State failed to turn over 224 photographs that Robbins had requested, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

The Supreme Court of the United States held in *Brady v. Maryland* that the prosecution's suppression of evidence favorable to the defendant is a violation of the defendant's constitutional right to due process. 373 U.S. 83, 87 (1963).  To determine whether there is a *Brady* violation, a court considers "(a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence." *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972).

The Nevada Court of Appeals rejected this claim on direct appeal:

> The district court concluded that *Brady* was not violated because the State provided the photographs to Robbins' prior counsel.  Because the district court's determination that the photographs were made available to the defense is supported by substantial evidence, *see Jones v. State*, 113 Nev. 454, 470, 937 P.2d 55, 65 (1997), and Robbins fails to demonstrate that he was prejudiced by the district court's failure to exclude the photographs or grant a continuance, *see Evans*, 117 Nev. at 638, 28 P.3d at 518 (the district court does not abuse its discretion "absent a showing that the State acted in bad faith or that the nondisclosure caused substantial prejudice to the defendant"), we conclude that these claims lack merit.

Exh. 2, pp. 2-3.

Crime scene analyst Deborah Brotherson testified at trial that she took photographs of Grochowski and his injuries. Exh. 227, pt. 1, 40-8, pp. 18-63.  Robbins' counsel did not object to the admission of those photographs.  Crime scene analyst Ebony McGhee testified at trial that

5

she took photographs of the outside of Grochowski's residence, including the backyard and the broken windows. Exh. 227, pt. 1, pp. 122-151; Exh. 227, pt. 2, pp. 1-14. McGhee testified that she photographed Robbins at the scene after his arrest. Robbins counsel objected that he had not seen those photographs. *Id*. at 139-140. The court reminded counsel that in the context of an earlier discovery motion it had directed the defense to review the file at the district attorney's office. The prosecutor stated that the photographs in question had been in the file for over five years. The court admitted the photos, which included pictures of Robbins' bloodied hands, Robbins' jeans which appeared to be blood-stained, a face warmer, and a green jacket that had been recovered by a police dog. McGhee testified that she also photographed the white van that was parked on the front lawn of Grochowski's residence and its contents. Defense counsel did not object to the admission of those photos.

The state-court record reflects that the photographs had been provided to Robbins' previous counsel. Exh. 229, pt. 1, pp. 114-124. On the third day of trial, Robbins counsel told the court that he did not have a copy of the photographs. The district attorney stated that he thought that the defense had everything. Robbins' counsel lodged a discovery objection on the basis that he had not seen the photographs. The court denied the motion, finding no prejudice, and directed the State to provide the defense another copy of the photographs. Robbins counsel informed the court:

> And, Your Honor, I never wanted to or never did try to preclude any of the photographs from coming in, that's why I did not oppose their admission. I just wanted to make a record, which I did, of the ones that I did not ever see, and I said discovery violation. Obviously, I assume that we're going to get a copy of it now. And certainly most of them have already been admitted. There may be a few more that we haven't gotten a copy of that will be coming up during the trial, and we'll have a copy.

*Id*. at 122-123. On the fourth day of trial, defense counsel informed the court that he had received all the photographs, and he stated: "And I do think that certainly the fact that we, for whatever reason, did not get all 150 photographs until yesterday afternoon during trial results in a prejudice to my client, and I just want to make that part of the record." Exh. 231, 40-14, pp. 5-6.

The respondents now argue that the photographs were inculpatory, not exculpatory, and that they merely bolstered trial testimony. ECF No. 50, pp. 6-7. For example, while the defense objected to photographs taken of Robbins on the night of the attack, Exh. 227, pt. 1, p. 139, Robbins' appearance was independently presented through testimony, including that his hands were bloody. *Id*. at 141-143. Defense objected to a photograph of a face warmer, but testimony described the face warmer and informed the jury that Robbins admitted that it was his. *Id*. at 144; Exh. 229, pt. 2, p. 73; Exh. 235, pt.1, pp. 84-85. Robbins' counsel objected to photographs of a backyard in the victim's neighborhood, but several witnesses described the location. Exh. 227, pt. 1, p. 145; Exh. 231, pp. 22, 144-145. The defense objected to photographs of the victim's wallet, but there was also independent testimony about the wallet and where it was found. Exh. 227, pt. 1, p. 146; Exh. 227, pt. 2, pp. 31, 44. Defense counsel further objected to photographs of the white van; however, considerable testimony related to the van was elicited at trial. Exh. 227, pt. 1, pp. 66-67, 69-70, 72-73, 147; Exh. 229, pt. 2, pp. 2-3; Exh. 233, pp. 87-88.

While it appears that Robbins' trial counsel did not have all photographs used by the prosecution until during the trial, the record reflects that the photographs (1) were not exculpatory; and (2) merely served to further support ample independent testimony. Robbins has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 1(a) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Ground 1(a), therefore, is denied.

**Ground 2**

Robbins argues that his trial counsel was ineffective for failing to file a petition for writ of habeas corpus ad testificandum for his former co-defendant Frank Morales in violation of his Sixth and Fourteenth Amendment rights. Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was

7

not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). "We take a 'highly

8

deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id*. at 1403 (internal citations omitted).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ----, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted). Federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84.

The Nevada Court of Appeals affirmed the denial of this claim in Robbins' state postconviction petition:

> Robbins claims the district court erred by denying his claim counsel was ineffective for failing to file a petition for writ of habeas corpus ad testificandum for Robbins' codefendant, which would have secured the codefendant's presence at Robbins' trial. Robbins' codefendant, who was in federal custody in another state, provided an affidavit stating Robbins did not know the codefendant was going to rob the victim and Robbins did not participate in the robbery. Robbins claims counsel should have secured the codefendant's presence at trial in order to testify regarding claims in the affidavit. . . .
>
> Robbins failed to demonstrate counsel was deficient or resulting prejudice. The district court held an evidentiary hearing, and counsel testified he specifically did not want Robbins' codefendant to testify because the codefendant told counsel he could not testify in support of the affidavit because the affidavit was contradicted by the evidence presented at trial. This was a reasonable strategic decision by counsel. *See Doleman v. State*, 921 P.2d 278, 280-81 (1996) (observing strategic

9

> decisions are virtually unchallengeable under most circumstances).  Therefore, counsel was not deficient for failing to file a petition for a writ of habeas corpus ad testificandum to secure the codefendant's presence at trial.
>
> Further, Robbins failed to demonstrate he was prejudiced by counsel's failure to seek Robbins' codefendant's presence at trial because he failed to demonstrate a reasonable probability of a different outcome at trial had the codefendant testified. The affidavit provided by the codefendant was contradicted by the testimony of the victim and the evidence presented at trial.  Moreover, Robbins failed to demonstrate his codefendant's testimony at trial would have supported the claims in the affidavit.

Exh. 7.

Robbins' trial counsel, Arnold Weinstock, testified at the evidentiary hearing on Robbins' state postconviction habeas corpus petition. Exh. 345, pp. 4-26.  Weinstock stated that Frank Morales had been Robbins' co-defendant before Weinstock became involved with the case.  Morales pleaded guilty before Robbins went to trial. Exh. 80.  About two years prior to Robbins' trial, Weinstock received an affidavit signed by Morales, reviewed it with Robbins and the defense investigator, and then spoke by telephone with Morales, who was in federal custody, about it. Exh. 345, pp. 4-26; exh. 6.  Morales stated in the affidavit that Robbins had no idea of Morales' intention to rob the victim and that it was solely Morales who pried open the door, beat the victim with the crowbar, tased him and demanded the money.  Morales further stated that Robbins was "nowhere to be found" during the robbery. *See, e.g.*, exh. 6, pp. 19-20.  Weinstock asked Morales if he would be able to testify to what he stated in the affidavit because Weinstock saw several inconsistencies between the affidavit and the discovery in the case.  He said that he specifically recalled that when he asked Morales about the inconsistencies Morales told him that he could not support the affidavit if he were called at trial.  Weinstock testified that the defense made a strategic decision not to arrange for Morales to be present to testify at trial.  Weinstock stated that he did not believe it would benefit Robbins for Morales to testify and to be subject to cross examination.  Weinstock testified that he expressed his concerns to Robbins and told his client that in his judgment they should not call Morales to testify.  Robbins wanted the affidavit presented to the jury, and Weinstock stated that he therefore attempted to submit it, knowing that the court would likely reject it.  Because he believed that Morales might undermine the affidavit

10

and otherwise not prove an effective defense witness if he testified, Weinstock made the strategic decision to try to introduce the affidavit without Morales' testimony.

Ground 2 lacks merit.  Defense counsel made a strategic decision that Morales' testimony—which at best would have contradicted the victim's testimony and other evidence—would not be beneficial to his client.  Robbins has failed to demonstrate that the Nevada Court of Appeals' decision on this claim was contrary to or an unreasonable application of *Strickland*.  Accordingly, federal ground 2 is denied.

The petition, therefore, is denied in its entirety.

## V.     Certificate of Appealability

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires me to issue or deny a certificate of appealability (COA).  I have evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

A COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id*.

None of my rulings in adjudicating Robbins' petition meets the *Slack* standard.  I therefore decline to issue a certificate of appealability for my resolution of any of Robbins' claims.

## VI.    Conclusion

I THEREFORE ORDER that the petition (**ECF Nos. 10 and 12**) **is DENIED** in its entirety.

/ / / /

/ / / /

I FURTHER ORDER that a certificate of appealability is DENIED.

I FURTHER ORDER the Clerk to enter judgment and close this case.

DATED: 12 December 2020.

U.S. District Judge Andrew P. Gordon